**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL M. HOWARD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL HOME LOAN MORTGAGE )<br>CORPORATION aka Freddie Mac; U.S. )<br>BANK, N.A., as Trustee for TruCap )<br>Grantor Trust 2010-2; and ASSURED )<br>LENDER SERVICES, INC. )<br>)<br>Defendants. )<br>_____ ) | 1:11-cv-01053-AWI-BAM<br><br>ORDER RE: PRELIMINARY INJUNCTION<br><br>(Doc. 10) |

## I. INTRODUCTION

Plaintiff Paul M. Howard has moved for a preliminary injunction enjoining defendants U.S. Bank, N.A., Assured Lender Services, Inc., and their employees, agents and representatives from conducting a foreclosure sale of real property in Modesto, California. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court grants the motion.

## II. FACTS AND PROCEDURAL BACKGROUND

On June 24, 2011, plaintiff Paul M. Howard ("Plaintiff") filed his complaint against defendants Federal Home Loan Mortgage Corporation aka Freddie Mac, U.S. Bank, N.A., as Trustee for TruCap Grantor Trust 2010-2 ("US Bank") and Assured Lender Services, Inc. ("ALS"), asserting causes of action for (1) quiet title/declaratory relief (against all defendants), (2) injunctive relief (against US Bank and ALS), (3) breach of contract (against Freddie Mac) and (4) breach of the implied covenant to convey title free of liens (against Freddie Mac). Plaintiff alleged as follows:

> "1. Plaintiff is an individual and the owner of a four-plex condominium located at 2108 Palisade Avenue, #1-4, Modesto, CA (the 'Property'). A legal description of the Property is attached hereto as Exhibit A. [¶] . . . [¶] 7. . . . [I]n 2008, Freddie Mac became the owner of the Property through a foreclosure sale on its then existing deed of trust ('the Freddie Mac DOT') against the Property. Plaintiff is informed and believes that a copy of the recorded Trustee's Deed Upon Sale (the 'Trustee's Deed') conveying the Property to Freddie Mac is attached hereto as Exhibit B. [¶] 8. In the summer of 2009, Plaintiff and Freddie Mac entered into a purchase agreement (the 'Purchase Agreement') for Plaintiff to purchase the Property from Freddie Mac (the 'Sale'). [¶] 9. The Sale closed, and on July 22, 2009, Freddie Mac executed a Grant Deed conveying the Property to Plaintiff. A copy of the recorded Grant Deed is attached hereto as Exhibit C."

Plaintiff further alleged:

> "10. Plaintiff is informed and believes that despite the Sale and corresponding Grant Deed on December 3, 2010, Freddie Mac caused the Trustee under the Freddie Mac DOT to rescind the Trustee's Deed. A copy of the Rescission of Trustee's Deed Upon Sale is attached hereto as Exhibit D. [¶] 11. Plaintiff is informed and believes that around February 2011, Freddie Mac's beneficial interest under the Freddie Mac DOT was assigned to Defendant U.S. Bank, N.A., as Trustee for TruCap Grantor Trust 2010-2. [¶] 12. Plaintiff is informed and believes that on June 3, 2011, U.S. Bank substituted in Assured Lender Services, Inc., as trustee under the Freddie Mac DOT. [¶] 13. Also on June 3, U.S. Bank caused Assured Lender Services to record a Notice of Trustee's Sale (the 'Foreclosure Sale') to foreclose on Unit 4 of the Property only. According to the Notice, the Trustee's Sale is set for June 28, 2011 at 12:00 p.m. A copy of the Notice of Trustee's Sale is attached hereto as Exhibit E."

On June 24, 2011, Plaintiff filed a motion for a temporary restraining order enjoining US Bank and ALS from proceeding with a foreclosure sale of Unit 4 of the Property. Plaintiff further moved for issuance of an order to show cause re: preliminary injunction enjoining US Bank, ALS and their representatives from proceeding with the foreclosure sale during the pendency of the litigation. On June 24, 2011, the Court granted Plaintiff's motion for a temporary restraining order and further directed US Bank and ALS to appear before the Court on July 11, 2011 and show cause why a

preliminary injunction should not be granted "enjoining Defendants and their officers, employees, agents, servants, contractors, and representatives, and all persons and entities acting by or through them from proceeding with a Trustee Sale . . . on Unit 4" of the Property.

On July 1, 2011, US Bank and ALS filed their opposition to Plaintiff's application for preliminary injunction. On July 6, 2011, Plaintiff filed his reply to the opposition.

On July 8, 2011, the Court approved the parties' stipulation to continue the hearing on the order to show cause to August 29, 2011, and renewed the temporary restraining order pending further order of the Court. On August 23, 2011, the Court approved a second stipulation to continue the hearing on the order to show cause to October 24, 2011, and renewed the temporary restraining order pending further order of the Court. On October 20, 2011, the Court approved a third stipulation to continue the hearing on the order to show cause to January 30, 2012, and renewed the temporary restraining order pending further order of the Court. On January 27, 2012, the Court vacated the January 30, 2012 hearing date and took the matter under submission.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs requests for preliminary injunctions. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.' " *Id*. at 24 (internal citations omitted). The Ninth Circuit has adopted a sliding scale approach to preliminary

injunctions in which an injunction may issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2000)).

## IV. DISCUSSION

The gravamen of Plaintiff's quiet title claim – the sole substantive cause of action brought against US Bank and ALS – is Plaintiff claims an interest in the subject real property adverse to US Bank's and ALS's. "Quiet title claims are governed by California Code of Civil Procedure § 761.020, which requires that five elements be set out in a 'verified complaint': (1) a description of the property, both legal description and street address; (2) the title of the plaintiff, and the basis for that title; (3) the adverse claims to the plaintiff's title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff's title against the adverse claims. Cal. Civ. Proc. Code § 760.020(a)-(e)." *Briosos v. Wells Fargo Bank,* 737 F.Supp.2d 1018, 1031 (N.D.Cal. 2010). Allegations satisfying the foregoing elements have been provided in the complaint.

Plaintiff now contends he has a reasonable likelihood of prevailing on the merits of his claim because his sale documents and grant deed reflect he purchased all four units of the subject property. In support of this contention, Plaintiff adduces as evidence (1) the purchase agreement he entered into with Freddie Mac, which shows he purchased "2108 Palisade Ave" from Freddie Mac on June 23, 2009, and (2) the addendum to that agreement, which further describes the purchased property as "2108 Palisade Avenue #1-4, Modesto, CA, 95350." Plaintiff also adduces as evidence the trustee's deed upon sale by which Freddie Mac first acquired the subject property at a foreclosure sale conducted by Cal-Western Reconveyance Corporation. Lastly, Plaintiff adduces as evidence the grant deed by which Freddie Mac conveyed the property to him, which contains a description of the property identical to the description on the trustee's deed upon sale. In the Court's view, this

4

1 showing sufficiently demonstrates a likelihood of success on the merits of Plaintiff's claim.

2 US Bank and ALS assert that, at best, Plaintiff is the owner of only one of the units at the Palisade Avenue address. They refer to language in the abovementioned trustee's deed upon sale stating the property was first conveyed to Freddie Mac under a deed of trust executed by Gerardo F. Ramirez. According to the trustee's deed upon sale, Ramirez's deed was recorded in the official records of Stanislaus County as Document No. 2007-0097290-00. Defendants then adduce as evidence Document No. 2007-0097290-00, which describes the property securing that deed as "Parcel ID Number 005[-]069[-]067 [¶] 2108 Palisade Avenue #1 [¶] Modesto." US Bank and ALS also point to a second deed of trust executed by Ramirez, recorded in Stanislaus County as Document No. 2007-0097292-00, which purports to describe "2108 Palisade Avenue 4" as being located at "Parcel ID Number 005-072-067." From this, US Bank and ALS contend Plaintiff cannot establish a reasonable likelihood of success on the merits because the inconsistency in parcel numbers indicates Freddie Mac only acquired title to Unit 1 of the property and thus Plaintiff, by extension, could only have acquired title to Unit 1 – but not Unit 4 – from Freddie Mac.

The Court disagrees. "To be valid on its face, a deed must contain such a description of the real property thereby intended to be conveyed as will enable the property to be readily located by reference to the description . . . . [T]he description by boundaries may be ambiguous or indefinite, and still the deed sufficient if it otherwise provides means whereby the description can be made certain and the land identified and located." *Scott v. Woodworth,* 34 Cal.App. 400, 409, 167 P. 543 (1917). In this case, the three documents crucial to chain of title – Plaintiff's grant deed, Freddie Mac's trustee's deed upon sale and Ramirez's first deed of trust (doc. no. 2007-0097290-00) – each contain a formal *legal description* of property by reference to government maps. That description is identical across all documents and reads in pertinent part as follows:

> "THE CONDOMINIUM ESTATE CONSISTING OF: [¶] (A) UNITS 1 THROUGH 4 OF LOT 33 IN BLOCK 6434 OF PRESCOTT ESTATES AS SHOWN UPON THE MAP THEREOF, FILED IN THE OFFICE OF THE RECORDER OF

5

1 | STANISLAUS COUNTY, CALIFORNIA ON AUGUST 27, 1969 IN VOLUME 22
2 | OF MAPS, AT PAGE 28, AS SHOWN ON EXHIBIT 'A' ATTACHED TO THE
3 | CONDOMINIUM PLAN DATED NOVEMBER 4, 1969, RECORDED
4 | NOVEMBER 5, 1969 IN BOOK 2301, AT PAGE 59 OF OFFICIAL RECORDS OF
5 | STANISLAUS COUNTY AND AS DEFINED IN THE DECLARATION OF
6 | RESTRICTIONS, RECORDED JULY 23, 2004, AS INSTRUMENT NO. 2004-
7 | 0118854-00, STANISLAUS COUNTY RECORDS."

This description is sufficiently specific to allow one to locate the properties that are the subject of those documents. "It is well settled that where a deed refers to a map or other instrument with a reference sufficiently certain to identify it, that instrument is regarded as incorporated in the deed as part of it." *Calvi v. Bittner,* 198 Cal.App.2d 312, 316, 17 Cal.Rptr. 850 (1961). Because the legal description is identical across the three documents, the most compelling inference from the record is that the documents all refer to the *same* property. Absent evidence the foregoing description does not encompass Unit 4, which Defendants have not provided, the fact there may be inconsistencies in the various assessor's parcel numbers does not preclude Plaintiff from demonstrating a likelihood of success on the merits. "[T]he Assessor's overriding purpose in delineating and numbering assessment parcels is to efficiently identify real property for tax assessment purposes, and *not* to legally define or limit a property owner's actual rights or title to land." *Ott v. County of Fresno,* 2007 WL 4555324 (Cal.App. 5 Dist. 2007) (unpublished), at *5 (emphasis original).[1]

The Court further finds Plaintiff has shown he is likely to suffer irreparable harm. Plaintiff will lose Unit 4 of the subject property if US Bank and ALS are allowed to foreclosed. Real property is presumed to be unique and as such, a potential loss of real property, as here, constitutes irreparable injury entitling one to equitable relief. *Sundance Land Corp. v. Community First Federal Sav. and Loan Assn.,* 840 F.2d 653, 661 (9th Cir. 1988). Lastly, the Court finds the balance of hardships tips

---

[1] The Court may cite unpublished California appellate decisions as persuasive authority. *See Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

in Plaintiff's favor. *Baypoint Mortgage v. Crest Premium Real Estate Investments Retirement Trust,* 168 Cal.App.3d 818, 214 Cal.Rptr. 531 (1985) (*Baypoint Mortgage*) is persuasive on this issue.

Baypoint Mortgage Corporation (Baypoint) had acquired junior deeds of trust that were part of 23 all-inclusive deeds of trust, thereby assuming the obligations of the trustor on the deeds as well as the obligor on the 23 underlying promissory notes. *Baypoint Mortgage, supra,* 168 Cal.App.3d at 821-22. The notes provided that principal and interest was payable on the first day of every calendar month. In addition, each deed provided that in the event the trustor failed to meet the obligations set forth in the underlying note, such failure would constitute a default entitling the beneficiary on the deed to all available right and remedies, including the right to declare a default for failure to pay. *Id*. at 822-23. Crest Premium Real Estate Investments Retirement Trust (Crest), an ERISA pension plan, was the beneficiary of the 23 all-inclusive deeds. *Id*. at 822. When Baypoint failed to make its payments for December 1983 by the first of that month, Crest recorded notices of default for all 23 deeds and sought to foreclose against them. Baypoint then sued Crest and sought to enjoin the foreclosure proceedings. The trial court granted a preliminary injunction prohibiting Crest from taking further action under the notices of default, filing notices of trustee sale or selling the real property secured by the deeds, and the Court of Appeal affirmed. *Id*. at 534.

In determining the proper balance of equities between the parties, the court reasoned: "[W]e have no trouble finding the court properly exercised its discretion when it concluded the plaintiff faces greater harm from denial of the injunction than defendant would from its issuance. Here, the defendant seeks to foreclose several hundred thousand dollars worth of trust deeds. Should the defendant prevail at trial the worst that it will have suffered will have been some delay in foreclosure. The bond will secure it against any additional or further losses. Moreover defendant will be in a position at that time to recoup any late fees which the court determines were actually owed. The plaintiff, on the hand, stands to lose all of its trust deeds as well as being chargeable with the foreclosure expenses which may amount to $15,000 or so unless the foreclosure is restrained. His prayer for a permanent injunction against the foreclosure, if granted, would be useless since the

trust deeds already would have been sold. Much of the other relief he seeks in the main action likewise would be rendered irrelevant." *Baypoint Mortgage, supra,* 168 Cal.App.3d at 824-25.

In this case, as in *Baypoint*, should US Bank and ALS prevail at trial, the worst they will have suffered will be some delay in foreclosure, along with the possibility of lost rents. Plaintiff, on the other hand, stands to lose a substantial part of his investment in the property. In a declaration submitted with the reply, Plaintiff testified he purchased the property in June 2009 for $220,000. Plaintiff further testified that after he purchased the property, he spent more than $40,000.00 repairing and upgrading the units so they could be leased. The portion of the purchase price and repair costs attributable to Unit 4 would be lost by Plaintiff if the foreclosure were permitted to go forward, with the repairs inuring to Defendants' benefit. Plaintiff also has a cause of action for injunctive relief that would be rendered nugatory if the foreclosure proceedings are not preliminarily enjoined. Under these circumstances, the balance of hardships clearly tips in favor of Plaintiff.

## V. DISPOSITION

Based on the foregoing, the motion of plaintiff Paul M. Howard for a preliminary injunction is GRANTED. Defendants U.S. Bank, N.A., as Trustee for TruCap Grantor Trust 2010-2, Assured Lender Services, Inc., their officers, employees, agents, servants, contractors and representatives, and all persons and entities acting by and through them, are hereby PRELIMINARILY ENJOINED and RESTRAINED from proceeding with a trustee's sale of Unit 4 of 2108 Palisade Avenue, #1-4, Modesto, California 95350 pending further order of the Court. In accordance with Federal Rule of Civil Procedure 65(c), the Court further directs Plaintiff to post an undertaking in the amount of $10,000.00 within seven calendar days of entry of this order.

IT IS SO ORDERED.

Dated:   February 24, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE